Case 1:17-cv-00219  Document 20  Filed on 07/23/18 in TXSD  Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
July 23, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CARLOS EDUARDO DELGADO, Movant, | § § § | |
| v. | § § | Civil Action No. 1:17-cv-219 |
| UNITED STATES OF AMERICA, Respondent. | § § § | |

**MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

The Court is in receipt of Carlos Eduardo Delgado's pro se 28 U.S.C. § 2255 Motion (hereinafter, Delgado's "Motion" or "§ 2255 Motion"), and "Memorandum in Support." Dkt. Nos. 1 and 2. The Government has filed a Motion for Summary Judgment and Response to Delgado's Motion, arguing that Delgado's claims should be dismissed with prejudice for lack of merit. Dkt. No. 19 at 12-27. For the reasons provided below, it is recommended that the Court: (1) **GRANT** the Government's Motion for Summary Judgment; (2) **DISMISS** Delgado's Motion with prejudice; and (3) **DECLINE** to issue a certificate of appealability.

### I. Jurisdiction

This Court has jurisdiction over Delgado's Motion pursuant to 28 U.S.C. § 1331 and § 2255.

## II. Background

On July 28, 2015, Delgado pleaded guilty to "possession with intent to distribute a quantity more than 500 grams, that is approximately 2.2 kilograms of cocaine," in violation of 18 U.S.C. § 2, and 21 U.S.C. § 841(a)(1) and § 841(b)(1)(B). *See United States of America v. Carlos Eduardo Delgado*, No. 1:15-cr-00465, Dkt. No. 74 at 1.[1] On August 4, 2016, Senior United States District Judge Hilda Tagle sentenced Delgado to 60 months of imprisonment and a four-year term of supervised release, without supervision. *Id*. at 1-3. Judgment was entered on August 17, 2016. *Id*. Delgado appealed. CR Dkt. No. 71. The Court of Appeals for the Fifth Circuit dismissed his appeal on June 14, 2017, finding that he had raised "no nonfrivolous issue for appellate review." CR Dkt. No. 90 at 1-2.

Delgado filed his instant timely § 2255 Motion on October 11, 2017. Dkt. No. 1 at 9.[2] In his Memorandum in Support, he purports to raise five separate ineffective assistance of counsel claims. Dkt. No. 2 at 2. Specifically, he lists the following enumerated claims:

1. "Defense counsel was ineffective for the failure to move the court for the safety valve base on the defendant's status as a first time offender."

---

[1] Hereinafter, Delgado's criminal case docket entries ("CR Dkt. Nos.") will be referred to only by their docket entry numbers.

[2] Delgado indicates that he gave his § 2255 Motion to prison authorities for mailing on October 11, 2017. Dkt. No. 1 at 9. The Court will consider his Motion filed on that date. *See generally Spotsville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (noting that, for statute of limitations purposes, a pro se prisoner's application is filed on the day it is placed in the prison mailing system); *United States v. Young*, 966 F.2d 164, 165 (5th Cir. 1992) (applying the mailbox rule to pro se prisoner proceedings under 28 U.S.C. § 2255).

2. "Defendant was deprived of effective assistance of counsel at sentencing when defense counsel failed to fully investigate the aggravated charge against defendant."

3. "Defense counsel failed to argue that the aggravated charge against defendant was due to an error done by the Sheriff's Office of Cameron County. When in reality the aggravated charge in question belonged to a different individual."

4. "Defense counsel failed prove that the defendant did not have a criminal history. Which resulted for Defendant to be move to category 2 instead of category one."

5. "Defense counsel failed to argue the defendant's sentencing time. Which resulted that the defendant to be sentence to do more time than he suppose to."

Dkt. No. 2 at 2 (errors in original); *see also* Dkt. No. 1 at 3 ("Counsel failed to fully investigates aggravated charges that were against pro-se. Counsel failed to prove an error on pro-se sentencing because of the aggravated charges against him.") (errors in original).[3]

The Government filed a Motion for Summary Judgment and Response to Delgado's Motion on January 9, 2018. Dkt. No. 19. The Government states that Delgado's Motion should be dismissed with prejudice for lack of merit. *Id.* at 12-27. Despite being notified of his opportunity to respond (*see* Dkt. No. 6 at 1), Delgado has not filed a reply to the Government's Response.

### III. Legal Standards

**28 U.S.C. § 2255**. Pursuant to 28 U.S.C. § 2255, a defendant may move to vacate, set aside or correct his sentence if: (1) the sentence was imposed in violation

---

[3] The body of Delgado's Memorandum in Support (*see* Dkt. No. 2 at 4-8) makes additional allegations, albeit in an unclear fashion, which the Court will address below.

of the Constitution or the laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). The nature of a § 2255 collateral challenge is extremely limited, being reserved for instances of constitutional or jurisdictional magnitude. *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991). If an error is not of constitutional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

**Ineffective Assistance of Counsel.** The "Sixth Amendment guarantees a[ll] defendant[s] the right to have counsel present at all 'critical' stages of the criminal proceedings" instituted against them. *Missouri v. Frye*, 566 U.S. 134, 140 (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)). Critical stages include not only trial, but also pretrial proceedings — including the plea-bargaining process. *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing is also constitutionally impermissible. *Lafler*, 566 U.S. 156. The constitutional standard for determining whether a criminal defendant has been denied effective assistance of counsel at any of the critical stages mentioned above was announced by the Supreme Court in *Strickland v. Washington*:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has

> two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. 668, 687 (1984).

In order to demonstrate that his attorney's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Darden v. Wainwright*, 477 U.S. 168, 184 (1986); *Strickland v. Washington*, 466 U.S. at 687-88; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997); *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994). A convicted defendant carries the burden of proof and must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 687-91; *Jones v. Cain*, 227 F.3d 228, 230 (5th Cir. 2000); *Green v. Johnson*, 160 F.3d 1029, 1036 n.1 (5th Cir. 1998); *Burnett v. Collins*, 982 F.2d 922, 928 (5th Cir. 1993).

In reviewing counsel's performance, the Court must be "highly deferential," making every effort "to eliminate the distorting effects of hindsight," and must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution. *Id*. In order to establish that he sustained prejudice, the convicted defendant must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Williams v. Taylor*, 529 U.S. 362, 391; *Strickland*, 466 U.S. at 694.

The prejudice prong of *Strickland* focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair. "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Williams*, 529 U.S. at 393 n. 17; *Strickland*, 466 U.S. at 692.

Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or actual prejudice under that test will ordinarily make it unnecessary to examine the other prong. *See Strickland*, 466 U.S. at 700; *Ransom v. Johnson*, 126 F.3d at 716, 721 (5th Cir. 1997); *United States v. Seyfert*, 67 F.3d 544, 547 (5th Cir. 1995); *Armstead v. Scott*, 37 F.3d 202, at 210 (5th Cir. 1994). Therefore, failure to establish that counsel's alleged performance fell below an objective standard of reasonableness renders moot the issue of prejudice. *See United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir. 1990); *Thomas v. Lynaugh*, 812 F.2d 225, 229-30 (5th Cir. 1987). It is also generally unnecessary to consider whether counsel's performance was deficient where there is an insufficient showing of prejudice. *See Black v. Collins*, 962 F.2d at 401; *Martin v. McCotter*, 796 F.2d 813, 821 (5th Cir. 1986).

## IV. Discussion

As noted above, Delgado's Memorandum in Support of his § 2255 Motion purports to raise five separate ineffective assistance claims against his counsel, Anthony P. Troiani. Dkt. No. 2 at 2. However, his allegations are not entirely clear. *See id*. at 2, 4-8. Construed liberally, his Motion and Memorandum in Support appear to attack Troiani's alleged failure to challenge: (1) the inclusion of a 1997 assault conviction in the criminal history section of his Presentence Investigation Report ("PSR"); (2) the inclusion of a 1997 public intoxication conviction in the criminal history section of his PSR; (3) the inclusion of a 2010 assault conviction in the criminal history section of his PSR; (4) Judge Tagle's consideration of his convictions for assault and public intoxication during sentencing. *Id*. Rephrasing his claims for the sake of clarity, then, it appears Delgado is contending that Troiani provided ineffective assistance when:

1. he failed to investigate the 1997 assault conviction and/or prove that the conviction belonged to someone else with the same name and address;

2. he failed to investigate the 2010 assault conviction and prove that the conviction belonged to someone else with the same name and address;

3. he failed to get the assault and public intoxication convictions removed from the PSR, which resulted in a higher assessed criminal history score and a longer sentence;

4. he failed to obtain a safety-valve sentencing adjustment, or otherwise argue for a reduction in sentence.

*Id.*[4]  Delgado argues that, but for Troiani's failures, he would have received a reduced criminal history score, a "safety-valve" reduction in his sentence, and a shorter sentence overall.  *Id*.

**A. Delgado's claim that Troiani provided ineffective assistance when he failed to investigate the 1997 assault conviction and/or prove that the conviction belonged to someone else with the same name**.  Delgado asserts that he was arrested in 1997 as a result of an argument, not an assault.  Dkt. No. 2 at 5.  He relies upon an unsworn letter from his wife, Nancy Delgado, to support this contention.  *Id*. at 10 (containing a copy of the letter); Dkt. No. 2-1 at 1 (containing a duplicate copy of the letter).  Nancy Delgado's letter states that Delgado did not assault her in 1997.  Dkt. No. 2-1 at 1.  Instead, she states that they were merely arguing when the police arrived.  *Id*.  She claims that, when she told the police she had no charges to press against Delgado, they informed her that they had arrested him for public intoxication.  *Id*.  She states that this did not make sense because Delgado had been drinking that day, but only inside their home.  *Id*.

Delgado also refers to an arrest involving an assault committed by another person with his same name and address.  Dkt. No. 2 at 6.  Because his briefing is imprecise, it is not clear if Delgado is claiming that the 1997 assault was committed by someone else, or if he is referring to a separate assault conviction.  *See id.*

---

[4] Safety-valve sentencing adjustments allow "less culpable defendants who fully assisted the Government to avoid the application of the statutory mandatory minimum sentences." *United States v. Rodriguez*, 60 F.3d 193, 196 (5th Cir. 1995); *United States v. Cruz-Romero*, 848 F.3d 399, 401 (5th Cir. 2017) (same).  To obtain the adjustment, the defendant must satisfy five criteria.  *Cruz-Romero*, 848 F.3d 399, 401 (citing U.S.S.G. § 5C1.2(a)(1)–(5) and 18 U.S.C. § 3553(f)(1)–(5)).  If the defendant satisfies the criteria, the court may impose a sentence "without regard to a statutory minimum." *Id*. (citing U.S.S.G. § 5C1.2(a)).

Delgado's PSR reports that he had three separate Class C misdemeanor convictions. CR Dkt. No. 46 at 8-10. Two of those convictions were for assault, and the remaining conviction was for public intoxication. *Id*. In relevant part, the PSR provides as follows:

(1) Delgado was arrested and charged with a Class C assault and public intoxication on August 18, 1997. Dkt. No. 46 at 8-9.[5] Delgado pleaded no contest and paid fines for these convictions, but he did not do so until August 13, 2014. *Id*.

(2) Delgado was arrested and charged with a second Class C assault on September 12, 2010. CR Dkt. No. 46 at 10. Delgado pleaded guilty and paid the fine for this assault on September 13, 2010. *Id*.

(3) The offense details provided in support of this second assault conviction indicate that Delgado's wife and son appeared in person at the Brownsville Police Department and reported that Delgado had hit his wife (Nancy Delgado) in the stomach and arm during a dispute. CR Dkt. No. 46 at 10. When his son, Carlos Delgado, Jr., tried to restrain him, Delgado hit his son on his left shoulder. *Id*. After receiving this information, officers went to Delgado's residence and arrested him. *Id*.

In support of his claim that someone else committed one of the assaults attributed to him, Delgado states that the "individual[']s" name is "Carlos Eduardo Delgado, Jr.," and indicates that he is "currently serving time" in the Robertson Unit in Abilene, Texas "for the assault charge in question." Dkt. No. 2 at 6. Delgado does not identify this individual as his son. *Id*. But, he states that he and Carlos Eduardo Delgado, Jr., shared an address, making it likely that Delgado is referring to his son. *Id*. Delgado has also submitted a letter, purportedly provided

---

[5] "Offense details" for these charges were not available at the time the PSR was prepared. CR Dkt. No. 46 at 8-9.

to him by Lieutenant Janie Trevino of the Cameron County Sheriff's Department. Dkt. No. 2 at 11. This letter is dated May 12, 2017, and appears to be initialed by Lieutenant Trevino. *Id*. In relevant part, the letter states:

> Mr. Delgado,
>
> In reply to your current letter that I received today stating that I had incorrectly placed a State Detainer on you. I read the letter and did some back ground investigation into the matter and found it to be that a mistake was made by placing that detainer on you when it was another inmate with the same name that was convicted of said offenses. The error done was not intentional but a human error unfortunately the wrong information was place on your file with the Federals.
>
> You have no state charges pending against you at all.
>
> I hope this will be sufficient information send that will allow you to not be precluded from any programs that may be available to you. I will be returning the copy of your birth certificate back to you.

*Id*. (errors in original).

Delgado's arguments regarding his 1997 assault conviction fail in several respects. First, even presuming Trevino's unsworn statements are authentic and accurate, Trevino does not identify the "offenses" she attributes to the inmate with Delgado's "same name." Dkt. No. 2 at 11. Trevino does not state that Delgado had no assault convictions, nor does she state that someone else's assault conviction(s) were attributed to Delgado. *Id*. Second, a 34-year old man named Carlos Eduardo Delgado is currently serving time in the Robertson Unit in Abilene, Texas, but not for assault. *See* https://offender.tdcj.texas.gov/OffenderSearch/offenderDetail. action?sid =0832 4024 (last visited, July 19, 2018). This inmate's extensive offense history suggests that, if a detainer was improperly placed upon Delgado, it was

likely related to a conviction listed in this inmate's offense history. *Id.* (listing convictions for possession of a controlled substance, theft, burglary, burglary of a habitation, and recent convictions for aggravated robbery).[6]

Third, Delgado has produced no other evidence indicating that his 1997 assault conviction belonged to someone else. In fact, his wife's letter confirms that Delgado was arrested on August 18, 1997, due to a domestic dispute. Dkt. No. 2-1. Fourth, and relatedly, Delgado has failed to produce evidence demonstrating that his 1997 assault conviction was the result of something other than his own plea of no contest. Therefore, even presuming Delgado was falsely charged with assault, his plea of no contest would have prevented Troiani from arguing that Delgado did not have a 1997 assault conviction. As a rule, a district court may presume that information contained in a defendant's PSR is reliable, and adopt the PSR without additional inquiry, "if the defendant fails to demonstrate by competent rebuttal evidence that the information is materially untrue, inaccurate or unreliable." *United States v. Washington*, 480 F.3d 309, 320 (5th Cir. 2007) (citations omitted). Delgado has failed to identify any evidence Troiani could have used to argue that the PSR contained information that was materially untrue, inaccurate, or unreliable.[7]

---

[6] Delgado's testimony during his sentencing indicated that his son had legal troubles because he stated that he had committed his offense (possession of cocaine with intent to distribute) in order to get money to pay his son's attorney. CR Dkt. No. 84 at 13-14.

[7] It appears that Delgado did not provide Troiani with any information to help him challenge the assault conviction. During sentencing, Troiani stated that Delgado did "not recall the offense[,]" and Delgado did not correct him. CR Dkt. No. 84 at 8. Delgado has

Delgado has not produced evidence indicating that Troiani provided him with ineffective assistance when he failed to investigate the 1997 assault conviction, and/or prove that the conviction belonged to someone else. Similarly, he has produced no evidence indicating that he was prejudiced by Troiani's alleged ineffectiveness. Having created no material question of fact on these issues, his first claim is subject to summary judgment.

**B. Delgado's claim that Troiani provided ineffective assistance when he failed to investigate the 2010 assault conviction and prove that the conviction belonged to someone else with the same name and address**. As noted above, Delgado's briefing is imprecise. But, to the extent that he is asserting that his 2010 assault conviction belonged to someone else, he has produced no evidence to support this claim. Delgado's PSR reports that he was arrested and charged with a second Class C misdemeanor assault on September 12, 2010. CR Dkt. No. 46 at 10. Delgado pleaded guilty and paid the fine for this assault on September 13, 2010. *Id*. The offense details provided in support of this conviction indicate that Delgado's wife and son appeared in person at the Brownsville Police Department and reported that Delgado had hit his wife in the stomach and arm during a dispute. CR Dkt. No. 46 at 10. When his son tried to restrain him, Delgado hit his son on his left shoulder. *Id*.

Delgado has produced no evidence to refute or undermine this information. Delgado has also failed to produce evidence demonstrating that his 2010 assault

---

filed nothing before this Court to indicate that he provided Troiani with facts which Troiani could have used to challenge the conviction.

conviction was the result of something other than his own guilty plea. Trevino's letter does not state that Delgado had no assault convictions, nor does it state that someone else's assault conviction was attributed to Delgado. Dkt. No. 2 at 11. Trevino's unsworn statements also fail to identify the "offenses" she references. *Id*. Finally, although a man named Carlos Eduardo Delgado is currently serving time in the Robertson Unit in Abilene, Texas, he is not serving time for assault. *See* https://offender.tdcj.texas.gov/OffenderSearch/offender Detail.action?sid=0832 4024 (last visited, July 18, 2018).

Delgado has failed to identify any evidence Troiani could have used to argue that the PSR contained information that was materially untrue, inaccurate, or unreliable. *See United States v. Washington*, 480 F.3d 309, 320 (a district court may generally presume that information contained in a defendant's PSR is reliable, and adopt the PSR, without additional inquiry, "if the defendant fails to demonstrate by competent rebuttal evidence that the information is materially untrue, inaccurate or unreliable.") (citations omitted). Thus, Delgado has not produced evidence indicating that Troiani provided him with ineffective assistance when he failed to investigate the 2010 assault conviction and/or prove that the conviction belonged to someone else with the same name. Similarly, he has produced no evidence indicating that he was prejudiced by Troiani's alleged ineffectiveness. Having created no material question of fact on these issues, his second claim is subject to summary judgment.

**C. Delgado's claim that Troiani provided him with ineffective assistance when he failed to get the assault and public intoxication convictions removed from the PSR, which resulted in a higher assessed criminal history score and a longer sentence.** At the threshold, Delgado's PSR did not assess any criminal history points for his public intoxication conviction. CR Dkt. No. 46 at 9. Therefore, Delgado cannot show prejudice resulting from Troiani's alleged ineffectiveness in failing to get this conviction removed from his PSR. Further, Delgado has failed to produce evidence demonstrating that his 1997 public intoxication conviction was the result of something other than his own plea of no contest. Therefore, even presuming Delgado was falsely charged with public intoxication, his plea of no contest would have prevented Troiani from arguing that Delgado did not have a conviction for public intoxication. Finally, as already addressed above, Delgado has produced no evidence indicating that his assault convictions were invalid, or belonged to someone else.

Delgado has not produced evidence indicating that Troiani provided him with ineffective assistance when he failed to get the assault and public intoxication convictions removed from the PSR. Similarly, he has produced no evidence indicating that he was prejudiced by Troiani's alleged ineffectiveness. Having created no material question of fact on these issues, his third claim is subject to summary judgment.

**D. Delgado's claim that Troiani provided him with ineffective assistance when he failed to obtain a safety-valve reduction, or otherwise**

**argue for a reduction in sentence**. Delgado's assertion that is entitled to a safety-valve reduction is conclusory and belied by the record. Although he argues that he should have received the reduction because he did not have a criminal history, he has produced no evidence to refute or even undermine the criminal history listed in his PSR. *See* CR Dkt. No. 46 at 8-10. Further, Troiani filed objections to the PSR prior to the sentencing hearing. CR Dkt. No. 41; CR Dkt. No. 47; CR Dkt. No. 84 at 4-13. In fact, Delgado's arguments before this Court merely replicate the objections Troiani made before Judge Tagle. *Compare id., with* Dkt. No. 2. As the Government points out, Troiani "made every effort to have the August 18, 1997 [assault] conviction removed from the criminal history calculation."[8] CR Dkt. No. 84 at 8-10. Troiani also asked the court to consider the age of Delgado's 1997 assault conviction when determining his sentence. *Id.* at 10, 13. In addition to this argument, Troiani sought sentence reductions on three other grounds before Judge Tagle pronounced Delgado's sentence. CR Dkt. No. 41; CR Dkt. No. 84 at 4-5, 10-11.

After listening to the parties' arguments, Judge Tagle sustained two of Troiani's objections and sentenced Delgado to the minimum statutorily required sentence of 60 months imprisonment. CR Dkt. No. 84 at 13. Delgado has not specified what else Troiani could or should have done to reduce his sentence, nor has he demonstrated that his sentence would have been shorter, but for Troiani's alleged errors. Conclusory allegations of deficient performance and prejudice do not satisfy *Strickland*'s two-pronged test. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir.

---

[8] Dkt. No. 19 at 19.

2000). Troiani was not required to file frivolous objections or motions. *Green v. Johnson*, 160 F.3d 1029, 1042 ("counsel is not required to file frivolous motions or make frivolous objections").

Delgado has not produced evidence indicating that Troiani provided him with ineffective assistance when he failed to obtain a safety-valve reduction, or otherwise argue for a reduction in sentence. Similarly, he has produced no evidence indicating that he was prejudiced by Troiani's alleged ineffectiveness. Having created no material question of fact on these issues, his fourth claim is subject to summary judgment.

## V. Conclusion

The claims contained in Delgado's § 2255 Motion and Memorandum in Support are unsupported and belied by the record. Therefore, no evidentiary hearing is proper and his claims should be dismissed with prejudice. *See Clark v. Collins*, 19 F.3d 959, 964 (5th Cir. 1994) ("The district court need not hold an evidentiary hearing to resolve ineffective assistance claims where the petitioner has failed to allege facts which, if proved, would admit of relief or where the [court's] record suffices for their disposition.") (citations omitted); *United States v. Fields*, 565 F.3d 290, 298 (5th Cir. 2009) ("If, on the record before us, 'we can conclude as a matter of law that [the petitioner] cannot establish one or both of the elements necessary to establish his constitutional claim, then an evidentiary hearing is not necessary[.]'") (citing *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995)).

## VI. Certificate of Appealability

A certificate of appealability shall not issue unless the movant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requires a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (internal quotations and citations omitted). Stated differently, where claims have been dismissed on the merits, the movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* at 484. Where claims have been dismissed on procedural grounds, the movant/petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

District courts may deny certificates of appealability sua sponte, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability should not issue in this case because Delgado has not made a substantial showing of the denial of a constitutional right.

## VII. Recommendation

For the foregoing reasons, it is recommended that the Court: (1) **GRANT** the

Government's Motion for Summary Judgment; (2) **DISMISS** Delgado's Motion with prejudice; and (3) **DECLINE** to issue a certificate of appealability.

## VIII.  Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

Signed on this 23rd day of July, 2018.

_____
**Ignacio Torteya, III**
**United States Magistrate Judge**